# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information Associated with the Cellular Telephone Number Assigned Call Number (248) 847-7161 that is Stored at Premises Controlled by T-Mobile US, Inc.

Case No. 2:22-mj-708

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit in Support of the Application, incorporated here by reference.

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of the Application, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit in Support of the Application, incorporated here by reference.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew J. Voytek IV*
*Applicant's signature*

Matthew J. Voytek, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 26, 2022

*Kimberly A. Jolson*
United States Magistrate Judge

City and state: Columbus, Ohio

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (248) 847-7161 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | Case No. 2:22-mj-708<br><br>**FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Voytek, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A) for information associated with the cellular telephone assigned call number (248) 847-7161 ("the **TARGET PHONE**"), whose service provider is T-Mobile US, Inc. ("T-Mobile"), a wireless telephone service provider headquartered at 3625 132nd Avenue SE, Bellevue, Washington.[1] The **TARGET PHONE** is described herein and in Attachment A, and the information to be disclosed by T-Mobile and seized by the government is described herein and in Attachment B.

---

[1] I previously applied for and obtained a similar search warrant directed to AT&T Corporation ("AT&T") for the requested records pertaining to the **TARGET PHONE**. *See* Case No. 2:22-mj-706-KAJ. Upon serving that warrant on AT&T, company representatives indicated that AT&T does not service that phone number, as initially indicated in law-enforcement databases. I then reached out to T-Mobile and asked if they were the carrier for the **TARGET PHONE**. T-Mobile representatives confirmed that their company provides service for the **TARGET PHONE**. Accordingly, I am resubmitting this application for a search warrant directed toward T-Mobile instead of AT&T.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3121(b)(1).

3. I am a Special Agent with the ATF and have been since January 2021. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal and state criminal offenses, the use of cellular devices to commit those offenses, and the available technology that law-enforcement officers can use to assist in identifying the users of cellular devices and their location. During my employment with ATF, I have assisted with investigating criminal violations relating to firearms, drug trafficking, and violent crime. I have participated in various aspects of criminal investigations, including interviews, physical surveillance, and the execution of search warrants. I am familiar with and have participated in investigative methods including electronic surveillance, search warrants, and the use of confidential informants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute controlled substances) [the "**SUBJECT OFFENSES**"] have been committed, are being committed, and will continue to be committed by Robert L. Haley and other unknown persons.

There is also probable cause to believe that the information described in Attachment B will constitute evidence of those criminal violations and will lead to the identification of other individuals who are engaged in the commission of these offenses.

6.  This Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.  In August of 2022, ATF Confidential Informant #31219 advised investigators that an armed drug trafficker named Brett Collins (a/k/a "BJ") deals fentanyl, pills, and marijuana in central Ohio. As a result, the ATF Columbus Field Office commenced an investigation into Collins, who is a convicted felon.[2] During the course of the investigation, agents applied for and were granted a pen register and trap and trace order for Collins's cellular telephone. A review of Collins's call detail records confirmed that the **TARGET PHONE**—believed to be used by Collins's in-law and associate, Robert Haley, was in contact with Collins's phone before, during, and after multiple controlled sales of cocaine, Percocet pills, marijuana, and firearms from Collins and Haley to an undercover ATF Special Agent.

8.  On or about September 8, 2022, Collins corresponded with an ATF Special Agent working in an undercover capacity ("SA #6134") regarding the sale of cocaine, some Percocet pills, and two firearms. Collins explained to SA #6134 that he had family in Dayton, Ohio, from whom he could acquire the cocaine to sell to SA #6134. Through a review of law-enforcement

---

[2] I have queried the Franklin County Clerk of Courts' Website and learned that Collins was convicted of a felony offense for improper handling of a firearm (F4) in Case No. 20-cr-063. Judgment was imposed for that conviction on or about June 15, 2020.

3

databases along with open-source social media, ATF personnel were able to identify family members Ashley Collins (Brett's sister) and her husband, Robert Haley,[3] who lived in Dayton.

### A. Sale of Four Firearms, Percocet Pills, Cocaine, and Marijuana.

9. Between September 8-20, 2022, Brett Collins corresponded with SA #6134 regarding the sale of firearms and multiple controlled substances.

10. On September 20, 2022, Brett Collins arrived at a pre-determined location to provide SA #6134 with the guns and the drugs. This deal involved pre-recorded funds and was recorded by audio and video devices. Collins exited the driver's seat of a black Dodge Charger and greeted SA #6134. SA #6134 then observed a *silver* Dodge Charger pull into the undercover location and park behind Collins. SA #6134 observed an older black male who was subsequently identified as Robert Haley appear from the driver's seat of the silver Dodge Charger. Haley walked up to SA #6134 and introduced himself as "Rob." As Collins, Haley, and SA #6134 were standing outside the trunk of the black Charger, Collins began looking around and asked Haley, "where is it at?" Haley responded, "gas tank." Collins responded to Haley, "It's in the gas tank?" Haley again stated to Collins, "gas cap, gas cap" (indicating the silver Dodge Charger). Collins then walked over to the silver Dodge Charger that Haley had driven, remotely popped the gas cap, and quickly retrieved a baggy of cocaine from within the gas cap before placing it into his front shorts pocket. Collins and Haley then walked back into the office of the undercover location and placed the cocaine on the desk. SA #6134 weighed the suspected cocaine and observed it to weigh 27.77 grams. SA #6134 pulled out $1,250.00 and handed it to Collins. Collins counted the money and confirmed the amount. Collins then handed the $1,250.00 dollars to Haley for the sale of the

---

[3] I have queried the National Crime Information Center ("NCIC") and learned that Haley was convicted of a felony offense for dealing/manufacturing a controlled substance (cocaine/heroin less than 50 grams) in Wayne County, Michigan, in March of 1990.

cocaine. After the exchange of currency and other contraband between Collins and SA #6134, all parties departed the undercover location.

### B. Sale of One Firearm, Percocet Pills, Cocaine, and Marijuana

11. Between September 23-28, 2022, Brett Collins corresponded with SA #6134 via text message about the sale of one firearm, pills, an ounce of cocaine, and marijuana.

12. On September 28, 2022, Brett Collins and Haley arrived at a pre-determined location to provide SA #6134 with the guns and the drugs. This deal likewise involved pre-recorded funds and was recorded by audio and video devices. Collins arrived at the undercover location in a white GMC SUV that was registered to Haley. Collins exited the right rear passenger seat. Haley was the driver, and his wife, Ashley Collins, was the front passenger. Cherese Walker, who was later identified, was in the left rear passenger seat. All occupants exited the vehicle and greeted SA #6134. Haley handed Collins an air-sealed bag of marijuana then entered back into the SUV. Collins then retrieved the rest of the contraband and placed it on an ottoman in front of the SUV. Collins began adding up the prices of the pills, firearm, marijuana, and cocaine. Haley then exited the SUV again and stood next Collins. SA #6134 then handed Collins $1,250.00 for approximately one ounce of cocaine. Collins took the $1,250.00 that was handed to him from SA #6134 and walked over to Haley. Collins then surreptitiously placed the $1,250.00 into Haley's front left jacket pocket. Haley affirmed the receipt of money from Collins. A brief conversation occurred between SA #6134 and Haley. Haley stated he was originally from Detroit. SA #6134 then advised Collins that because business has been so good, he may be able to purchase more cocaine in the future. This statement was made in the presence of Collins and Haley. Collins advised SA #6134, "shit you know it, just let me know . . . (and then pointed to Haley) that's through him." Collins stated, "Yea that's fire you can cut that with Adderall or caffeine." Haley then

5

stated, "I don't cut it up with shit." Shortly after, all occupants from the white SUV departed from the pre-arranged location.

### C. Sale of Two Firearms, Cocaine, and Marijuana

13. Between September 28, 2022, and October 5, 2022, Brett Collins corresponded with SA #6134 regarding the sale of two firearms and multiple controlled substances.

14. Between September 28, 2022, through October 3, 2022, Collins texted SA #6134 about selling two pistols (a Freedom Ordinance, Model FX-9 and a Smith & Wesson Airweight revolver) along with cocaine and marijuana.

15. On October 5, 2022, Brett Collins and Haley arrived at a pre-determined location to provide SA #6134 with the guns and the drugs. This deal likewise involved pre-recorded funds and was recorded by audio and video devices. Collins arrived in a silver Dodge Charger. He was the driver and lone occupant. Collins exited the vehicle and advised SA #6134, "Hey waiting on my big brother (Haley) to pull up, he talking about 30-40 min on his bike . . . he got the Goldwing." Collins then opened the rear left passenger's door and obtained a large pillowcase and a black backpack. Collins entered the office and removed clear bags of marijuana from within the black backpack and presented them to SA #6134, in addition to two firearms that he removed from the pillowcase. Shortly after, Robert Haley arrived on his motorcycle. Haley momentarily got off the motorcycle and handed Collins the keys. Collins sat on the motorcycle. Haley then knocked on the center console storage area of the motorcycle, at which point Collins inserted the key and opened the center console. Collins retrieved two bags of cocaine, got off the motorcycle, and put the cocaine in his back pocket. SA #6134, Haley, and Collins continued a discussion around Haley's motorcycle. Haley then stated, "I'm gonna tell you, I drove 15 pounds and two bricks on this bitch from Detroit." Based on my training and experience, Haley was referencing transporting

15 pounds of marijuana and two kilograms of cocaine from Detroit. Collins eventually walked back into the office where he discussed the price of the two ounces of cocaine. Collins agreed to a price of $2,500.00. SA #6134 then paid Collins $2,500.00 for the suspected cocaine. Collins then approached Haley and retrieved the money from his rear right pocket and placed it in Haley's front left jacket. Shortly after, all parties left the undercover location and said their goodbyes.

### D. Robert Haley's Use of the TARGET PHONE

16. The **TARGET PHONE** has a listed subscriber of Lelani Memo. Based on my training and experience, I know that drug traffickers often use phone numbers/phone subscribers that do not directly link back to them or family members. This is a common method by drug traffickers to conceal their identity from other criminal individuals and/or law enforcement. The **TARGET PHONE** has a 248-area code, which covers Oakland County, Michigan. Investigators learned that Robert Haley previously lived at 18816 Middlesex Avenue, Lathrup Village, Michigan (in Oakland County). Investigators have not learned of any other associates of Brett Collins who have similar connections to Oakland County. On October 5, 2022, at approximately 11:51 a.m., during an undercover deal with SA #6134 and Collins, Collins explained to SA #6134 that he was going to call Haley and then placed the call on speaker phone in front of SA #6134. Haley answered the phone when Collins made the call. A brief conversation ensued between Collins and Haley in front of SA #6134, and then the call concluded. A review of Collins's Call Detail Records for October 5, 2022, showed a voice call occurred with phone subscriber Lelani Memo at approximately 11:52 a.m. Based on this information, investigators have probable cause to believe that Haley is using the **TARGET PHONE**.

### E. The TARGET PHONE'S Relationship to the Alleged Criminal Activity

17. As detailed above, Haley used the **TARGET PHONE** to facilitate the unlawful sale of controlled substances with Brett Collins and an undercover ATF special agent.

18. In addition, I know through training and experience that cellular telephones are commonly used, or have a relationship to, unlawful acts such as those described in this affidavit. For example, I know that cellular telephones are commonly in the physical possession of their owners/users, which could yield information regarding the who, what, when, where, and why of the **SUBJECT OFFENSES**, including information about how Haley came into possession of the cocaine; from whom he obtained the cocaine; when he took possession of the cocaine; where he was located when he obtained the cocaine; to whom else he might have marketed the cocaine or other unlawful contraband; and other actions he may have taken in furtherance of his criminal activity.

19. Information obtained from this warrant will be used to determine the location of the **TARGET PHONE** in relation to the deals and **SUBJECT OFFENSES** described above. Investigators believe that the information sought will provide other locations of interest to this investigation relevant to Haley and will also assist investigators in determining his whereabouts, conducting surveillance, and further establishing his pattern of activity and the patterns of activity of others who may be involved in these offenses.

### E-911 PHASE II DATA AND CELL-SITE DATA

20. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service:

8

(1) E-911 Phase II data, also known as GPS data or latitude-longitude data; and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.

21. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

22. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

23. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **TARGET PHONE**, including by initiating a signal to determine the location of the **TARGET PHONE** on T-Mobile's network or with such other reference points as may reasonably be available.

24. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **TARGET PHONE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal

9

course of business in order to use this information for various business-related purposes.

25. The GPS and cell-site data described above are imperative in this investigation due to the difficulty in conducting surveillance on individuals engaged in armed drug trafficking. The ability to safely locate the **TARGET PHONE** while Haley is engaged in criminal activity is important to obtaining evidence for prosecution and for executing an arrest.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), authorizing the acquisition of the information described in Attachment B for a period of thirty days.

27. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until thirty days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET PHONE** would seriously jeopardize an ongoing investigation, as such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See id.*

28. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference to T- Mobile's services, including by initiating a signal to determine the location of the **TARGET PHONE** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET PHONE** outside of daytime hours.

30. In accordance with this Court's local rules and standing orders, I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

31. Based on the facts set forth in this affidavit, there is probable cause to believe that Robert Haley did knowingly commit the **SUBJECT OFFENSES**. There is also probable cause to believe that the information sought in this warrant will assist in identifying previous locations corresponding to dates and times that Haley committed those offenses. Furthermore, the

information sought will assist in locating Haley in an effort to obtain further evidence of those offenses and will assist agents in determining his general location.

Respectfully submitted,

*Matthew J. Voytek IV*
Matthew Voytek, Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Subscribed and sworn to before me this 26th day of October, 2022.

Kimberly A. Jolson
United States Magistrate Judge

### Attorney Certification Under 18 U.S.C. §§ 3121-3127

    To ensure technical compliance with the Pen Register Act, 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the ATF. *See* 18 U.S.C. §§ 3122(b), 3123(b).

s/Noah R. Litton
Noah R. Litton
Assistant United States Attorney
Southern District of Ohio

## ATTACHMENT A

### Property to Be Searched

1. This warrant applies to records and information associated with the cellular telephone assigned call number (248) 847-7161 (the "**TARGET PHONE**"), that are stored at premises controlled by the wireless service provider (T-Mobile), a company headquartered at 3625 South 132nd Avenue SE Bellevue, Washington.

2. The requested records and information associated with the **TARGET PHONE** that are described more fully in the accompanying affidavit and in Attachment B that are within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

### Particular Things to Be Seized

I.    **Information to Be Disclosed by the Provider (T-Mobile)**

    A. **Location Data to Be Disclosed by the Provider**

All information about the location of the **TARGET PHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **TARGET PHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **TARGET PHONE** on T-Mobile's wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a (b)(2).

**B. Additional Records and Other Information to Be Disclosed by the Provider**

T-Mobile is also required to disclose to the government the following records and information concerning the **TARGET PHONE** described in Attachment A, if those records and information are within the possession, custody, or control of the company, for the time period of September 20, 2022, through the date this warrant is issued:

Customer/Subscriber Information

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);
3. Local and long-distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ["IP"] addresses) associated with those sessions;
5. Length of service (including start date) and types of services utilized;
6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ["ESN"], Mobile Electronic Identity Numbers ["MEIN"], Mobile Equipment Identifier ["MEID"], Mobile Identification Numbers ["MIN"], Subscriber Identity Modules ["SIM"], Mobile Subscriber Integrated Services Digital Network Number ["MSISDN"], International Mobile Subscriber Identifiers ["IMSI"], or International Mobile Equipment Identities ["IMEI"]);
7. Other subscriber names or identities (including the registration Internet Protocol ["IP"] addresses); and
8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

<u>Other Records and Information from September 20, 2022, to current, including</u>

1. Information about each communication sent or received by the **TARGET PHONE**, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

2. All data about which "cell towers" (i.e, antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **TARGET PHONE**.

II. **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute controlled substances).